RATTET PASTERNAK, LLP
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.
Julie A. Cvek, Esq.
Proposed Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

COASTAL ELECTRIC CONSTRUCTION CORP.,                Chapter 11
                                                    Case No. 11-75299
                              Debtor.
------------------------------------------------------------------X

## AFFIDAVIT OF KEVIN MCKOSKY PURSUANT TO F.R.B.P. RULE 1007(d) AND LOCAL BANKRUPTCY RULE 1007-4

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF SUFFOLK      )

KEVIN MCKOSKY, being duly sworn, deposes and says:

1. I am the President of Coastal Electrical Construction Corp. ("Coastal" or the "Debtor"). I have served as President of Coastal since its inception in 1991. As such, I am familiar with the Debtors' operations, businesses and financial affairs.

2. I submit this affidavit pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1007-4 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules").

## BACKGROUND

3.  The Debtor is an electrical construction contractor and an IBEW, Local 3 union employer which provides electrical construction services in both the public and private sector. The Debtor had previously operated from the building owned by its affiliate at 185 Waverly Avenue, Patchogue, New York 11772. However, due to the downturn in the Debtor's business, it is now based out of the personal residence of its principal, located at 37 Eatondale Avenue, Blue Point, New York 11715.

4.  The Debtor was formed eighteen years ago when its founder and President, Kevin McKosky, left his position with a major electrical firm to pursue his own endeavors and start his own electrical contracting company. For the first five years, the Debtor remained non-union and completed mostly commercial and industrial projects. After the initial five years, the Debtor had accumulated a sufficient capital base and cash reserve so that it was able to transition into the public sector and then became a union employer and employed electricians through the IBEW, Local 3.

5.  The Debtor's business flourished over the next ten years; its transition into the public sector proved successful with the Debtor successfully bidding public and governmental projects, and profiting each year. During this time, the Debtor had developed a nitche in its industry for its electrical construction work in high end security, which ensured bid invitations for governmental jobs.

6.  During the real estate boom in the 1990's and 2000's, the Debtor rapidly expanded, with annual revenues ranging between $20 - $40 million; revenues peaked in 2008 at $60-80 million. However, starting in 2006 through 2011, the Debtor experienced unprecedented difficulties collecting receivables from the general contractors it was working for, namely, Leon

D. DeMatteis Construction ("DeMatteis"), Skanska USA Building, Inc. ("Skanska"), and Hunter Roberts Construction Group ("Hunter Roberts").

7. In January 2006, DeMatteis subcontracted the Debtor for labor, material and equipment to complete electrical construction for a public improvement project known as the construction of the Federal Office Building at 45th Street and 1st Avenue, New York, New York (the "GSA Project"), having a based contract of $12,923,000. From the onset, the GSA Project suffered massive delays, partly attributable to the new and innovate concrete used to construct the building, which initially extended the project for fifteen (15) months. DeMatteis' delay claim totaled $23,000,000, with the Debtor's portion consisting of $2,450,000. DeMatteis' delays and request for change order persisted throughout the term of the GSA Project. After twenty-eight (28) months of delays, in December 2010 DeMatteis ultimately walked off the GSA Project, leaving the Debtor owed $7,344,663.25 on the GSA Project.[1]

8. In addition to the GSA Project, the Debtor suffered significant losses from other projects with DeMatteis, including the MS 114 Project, where the Debtor is estimated to owed $1,921,361.45, the PS 276 Project, where the Debtor is estimated to be owed $1,802,142.31, and the Sunset Park Project, where the Debtor is estimated to be owed $258,481.00. The Debtor estimates outstanding receivables due from DeMatteis in the aggregate amount in excess of $11 million.

9. In February 2009, Skanska subcontracted the Debtor for labor, material and equipment to complete electrical construction over a nine (9) month period to build the new United Nations Headquarters located at 42nd Street and First Avenue, New York, New York (the

---

[1] The Debtor's surety, Arch Insurance Group ("Arch"), assisted with the completion of the GSA Project, with the Debtor assigning its rights and interests Arch. Arch calculated the delay claim on the GSA Project to be approximately $6-8 million.

3

"UN Project"), having base contract of $11,215,904. The UN Project increase via scope and change order by an additional $22 million, with all of the work being competed within eleven (11) months. Throughout the duration of UN Project, Skanska was continually behind on processing change order and payments, which resulted in the Debtor being owed over $14 million at times.

10. Beginning in 2010, although Skanska was receiving government monies on the UN Project, Skanska stopped releasing payments to the Debtor. In December 2010, the Debtor commenced suit against Skanska to collect the outstanding $11,904,594.74 due the Debtor from the UN Project.

11. The third major general contractor the Debtor encountered problems with is Hunter Roberts on several jobs, most substantially including work done for the new construction of the Crown Heights Charter High School. In 2009, Hunter Roberts subcontracted the Debtor to provide certain labor, material and equipment to complete electrical construction for new charter high school located at 1485 Pacific Avenue, Brooklyn, New York 11216 (the "Crown Heights Project"), having base contract of $10,118,000.

12. In early May 2010, Hunter Roberts wrongfully termination the Debtor from the Crown Heights Project and took control over all aspects of the electrical contract, including funding weekly payroll, paying vendor claims and union obligations, and directing the Debtor's employees and managing the Debtor's vendors. In connection with this arrangement, Hunter Robert guaranteed to IBEW, Local 3 payment of all wages and benefits arising from work performed on the Crown Heights Project.

13. Notwithstanding, Hunter Roberts only funded the net payroll expenses to the Debtor's employees, without remitting withholding taxes, union dues, benefits or contributions.

4

Furthermore, Hunter Roberts has now sued the Debtor seeking to recover losses on the Crown Heights Project in excess of $700,000. The Debtor has asserted counter-claims against Hunter Roberts in the approximate amount of $2.7 million for losses sustained in connection with the Crown Heights Project.

14. Although the nature of the Debtor's operations requires the Debtor to act as its own bank and fund payroll and suppliers prior to being paid on its projects, the failure to recover almost $30 million in receivables from DeMatteis, Skanska and Hunter Roberts, has crippled the Debtor's cash flow and rendered the Debtor completely unable to operate. The cash shortfall caused by DeMatteis, Skanska and Hunter Roberts has depleted the $10 million line of credit the Debtor had with Capital One, N.A. so that the Debtor has encountered significant difficulties having access to any monies to fund new projects going forward.

15. Further exasperating the Debtor's cash flow constraints is the continued litigation between with DeMatteis, Skanska, and Hunter Roberts. In fact, Hunter Roberts has sought relief for entry of a pre-judgment order of attachment against the Debtor which, if granted, would render the Debtor incapable of any operations.

16. The Debtor has begun to start bidding new projects and secured two (2) new projects over the upcoming months which would start in August and last approximately one (1) year. These projects have contract bases of $5.150 million, which the Debtor forecasts a profit of $2 million.

17. By filing this Chapter 11 proceeding, the Debtor will be able to start to rebuild its business and operations, without the hostile collection efforts of DeMatteis, Skanska, Hunter Robert, as well as Capital One. The Debtor intends to take advantage of the future revenues, as well as collecting on its significant receivables, which would enable the Debtor to fund a plan of

5

reorganization, successfully emerge from bankruptcy and regain its position as a premier electrical construction contractor.

## PART II

## INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007

18. In addition to the foregoing, Local Bankruptcy Rule 1007-4 requires certain information related to the Debtors, which is set forth below.

**Local Rule 1007-4(a)(i)**

19. The Debtor is not a small business debtor.

**Local Rule 1007-4(a)(ii)**

20. The Debtor is an electrical construction contractor.

**Local Rule 1007-4(a)(iii)**

21. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

**Local Rule 1007-4(a)(iv)**

22. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-4(a)(v)**

23. A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting under Section 702 of the Bankruptcy Code; those who were employees of the Debtor at the Filing Date, and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed hereto as **Schedule I**.

**Local Rule 1007-4(a)(vi)**

24. A list of the names and addresses of the five largest secured creditors is annexed hereto as **Schedule II**.

**Local Rule 1007-4(a)(vii)**

25. A summary of the Debtor's assets and liabilities is annexed as **Schedule III**.

**Local Rule 1007-4(a)(viii)**

26. There are no publicly held securities of the Debtor. A List of Equity Security Holders is annexed hereto as **Schedule IV**.

**Local Rule 1007-4(a)(ix)**

27. None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-4(a)(x)**

28. The Debtor offices are located at 37 Eatondale Avenue, Blue Point, New York 11715.

**Local Rule 1007-4(a)(xi)**

29. The Debtor's substantial assets are located at 28 Garfield Avenue, Bay Shore, New York 11706.

30. The Debtor's books and records are located at 37 Eatondale Avenue, Blue Point, New York 11715.

31. The Debtors do not own any assets outside the territorial limits of the United States.

**Local Rule 1007-4(a)(xii)**

32. The following actions or proceedings are pending against the Debtors:

Capital One, N.A., Successor by Merger to North Fork Bank v. Coastal Electric Construction Corp. et al, pending in Supreme Court of the State of New York, Suffolk County, Index No. 034141/2010

Gotham Chemical Corp. et al. v. Coastal Electric Construction et al., pending in Supreme Court of the State of New York, New York County, Index No. 116722/2010

Midtown Electric Supply Corp., individually and on behalf of all others similarly situated with regard to that certain construction project located at 650 Brush Avenue v. Coastal Electric Construction, Corp. et al, pending in Supreme Court of the State of New York, Bronx County, Index No. 20940/2011

Crescent Electric Supply Company, Inc. of New York v. Coastal Electric Construction Corp, pending in Supreme Court of the State of New York, New York County, Index No. 650148/2010

Modern Empire Inc. d/b/a Modern Suppliers et al v. Coastal Electric Construction Corp., pending in Supreme Court of the State of New York, New York County, Index No. 650547/2010

Hunter Roberts Construction Group LLC v. Coastal Electric Construction Corp. et al., pending in Supreme Court of the State of New York, New York County, Index No. 650761/2010

Coastal Electric Construction Corp. v. Skanska USA Building Inc., pending in Supreme Court of the State of New York, New York County, Index No. 652360/2010

Midtown Electric Supply Corp et al v. Skanska USA Building Inc. et al, pending in Supreme Court of the State of New York, New York County, Index No. 652108/2010

Midtown Electric Supply Corp., individually and on behalf of all others similarly situated v. Coastal Electric Construction Corp et al., pending in Supreme Court of the State of New York, New York County

Dr. Gerald Finkel, as Chairman of the Joint Industry Board of the Electrical Industry, v. Coastal Electric Construction Corp. and Kevin Mckosky, pending in District Court for the Eastern District of New York, Index No. 09-3648

Coastal Electric Construction Corp. v. Leon D. Dematteis Construction Corporation et al, pending in District Court for the Southern District of New York, Index No. 11-2716

**Local Rule 1007-4(a)(xiii)**

33. The Debtor's senior management consists of Kevin McKosky, President and Kevin Tomlinson, Vice President.

**Local Rule 1007-4(a)(xiv)**

34. The estimated payroll to employees (exclusive of officers and directors) for the thirty (30) day period following the filing of the chapter 11 petition is $50,000.

**Local Rule 1007-4(a)(xv)**

35. The estimated amount to be paid for services to its officers and directors for the thirty (30) day period following the filing of the Chapter 11 petition is $10,000.

**Local Rule 1007-4(a)(xvi)**

36. The estimated schedule of cash receipts and disbursements for the thirty (30) day period following the filing of the Chapter 11 petition, net cash gain or loss, obligations and receivables expected to accrue but remaining unpaid, other than professional fees is annexed as **Schedule V**.

## PART III

## STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 9077-1

37. On the Filing Date, the Debtor will be seeking authorization for continued use of property which may constitute cash collateral in which Capital One, N.A. and Arch Insurance Group may assert a secured interest in said cash collateral (the "Cash Collateral Motion"), substantially in accordance with the terms and conditions as set forth in the proposed Interim Stipulation and Order Authorizing Use of Cash Collateral and Granting Adequate Protection of Liens (the "Interim Order").

38. The proposed Interim Order grants the Debtor the authority to use cash collateral pursuant to §§363 (c)(1) and (2) of the Bankruptcy Code and Bankruptcy Rule 4001(b) to the extent that the Debtor seeks authority to continue the operation of its business and to preserve the value of its estate pending a final hearing and in accordance with the terms of the budget annexed to the Interim Order.

39. The immediate use of cash collateral, and the Debtor's access to all of its cash, accounts receivable and cash equivalents, is essential to the operation of the Debtor's business, and will not only preserve the estate but will help to maximize its value for the benefit of the creditors.

40. Without the immediate use of and unfettered access to all cash collateral, the Debtor will not be able to make payroll and properly sustain its operations. The Debtor expects to commence two (2) new projects which will generate monthly fees and billings and are an ongoing source of significant revenue to the Debtor. If the Debtors are not permitted to immediately use cash collateral, these projects will be in jeopardy by virtue of the Debtor's inability, under such circumstances, to pay its employees, subcontractors and the daily costs and expenses associated with the projects.

41. As such, the relief sought in the Cash Collateral Motion on an interim basis is necessary to enable the Debtor to operate effectively as a debtor-in possession following the commencement of this chapter 11 case.

/s/ Kevin McKosky
Kevin McKosky

Sworn to before me this
25th day of July, 2011

/s/ Julie A. Cvek
Notary Public

# Schedule I

**List of Debtor's 20 Largest Unsecured Creditors**

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Eastern District of New York

In re   Coastal Electric Construction Corp.                                   Case No.   8-11-75299
                                            Debtor(s)                         Chapter    11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) *Name of creditor and complete mailing address including zip code* | (2) *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3) *Nature of claim (trade debt, bank loan, government contract, etc.)* | (4) *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5) *Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Joint Industry Board of the Electrical Industry 158-11 Harry Van Arsdale Jr. Avenue Fresh Meadows, NY 11365 | Joint Industry Board of the Electrical Industry 158-11 Harry Van Arsdale Fresh Meadows, NY 11365 | | | 5,400,000.00 |
| Schwing Electrical Supply 122 Allen Boulevard Farmingdale, NY 11735-5631 | Schwing Electrical Supply 122 Allen Boulevard Farmingdale, NY 11735-5631 | Electrical Supplies | | 437,000.00 |
| Crescent Electric Supply 221-18 Merrick Blvd Jamaica, NY 11413 | Crescent Electric Supply 221-18 Merrick Blvd Jamaica, NY 11413 | Electrical Supplies | | 309,000.00 |
| United Rentals (North America) P.O. Box 100711 Atlanta, GA 30384-0711 | United Rentals (North America) P.O. Box 100711 Atlanta, GA 30384-0711 | Supplies | | 234,853.46 |
| Tremont Electric Supply 1785 Jerome Avenue Bronx, NY 10453 | Tremont Electric Supply 1785 Jerome Avenue Bronx, NY 10453 | Electrical Supplies | | 222,468.75 |
| Benfield Electric Supply 25 Lafayette Avenue White Plains, NY 10603 | Benfield Electric Supply 25 Lafayette Avenue White Plains, NY 10603 | Electrical Supplies | | 175,263.63 |
| Gotham Lighting Supply 1786 E. 49th Street Brooklyn, NY 11234 | Gotham Lighting Supply 1786 E. 49th Street Brooklyn, NY 11234 | Electrical Supplies | | 175,000.00 |
| New York Electrical Power Services 5-38 46th Street Long Island City, NY 11101 | New York Electrical Power Services 5-38 46th Street Long Island City, NY 11101 | Vendor | | 173,100.00 |
| Champion Alarm Systems 4809 Avenue N Brooklyn, NY 11234 | Champion Alarm Systems 4809 Avenue N Brooklyn, NY 11234 | Alarm Services | | 152,795.00 |
| Elemco Constrution Co Inc 505-3 Johnson Avenue Bohemia, NY 11716 | Elemco Constrution Co Inc 505-3 Johnson Avenue Bohemia, NY 11716 | | | 147,996.57 |
| Ace Wire and Cable, Inc. 72-01 51st Ave Woodside, NY 11377 | Ace Wire and Cable, Inc. 72-01 51st Ave Woodside, NY 11377 | Electrical Supplies | | 130,000.00 |

B4 (Official Form 4) (12/07) - Cont.
In re  Coastal Electric Construction Corp.                                    Case No.  8-11-75299
                             Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Internal Revenue Service<br>Attn: Weiming Chi<br>1 Lefrak City Plz., 4thFl<br>Corona, NY 11368 | Internal Revenue Service<br>Attn: Weiming Chi<br>1 Lefrak City Plz., 4thFl<br>Corona, NY 11368 | Tax Debt | | 127,394.77 |
| Gallant & Wein Corp.<br>11-20 43rd Road<br>Long Island City, NY 11101 | Gallant & Wein Corp.<br>11-20 43rd Road<br>Long Island City, NY 11101 | Electrical Supplies | | 109,000.00 |
| Modern Suppliers<br>1155 Leggett Avenue<br>Bronx, NY 10474 | Modern Suppliers<br>1155 Leggett Avenue<br>Bronx, NY 10474 | Electrical Supplies | | 104,451.00 |
| Wise Components<br>79 Harborview Avenue<br>Stamford, CT 06902 | Wise Components<br>79 Harborview Avenue<br>Stamford, CT 06902 | Electrical Supplies | | 102,000.00 |
| Production Resource Group<br>200 Business Park Drive<br>Suite 109<br>Armonk, NY 10504 | Production Resource Group<br>200 Business Park Drive<br>Suite 109<br>Armonk, NY 10504 | Consulting Services | | 88,000.00 |
| Midway Electric<br>& Data Supply<br>403 Concord Avenue<br>Bronx, NY 10454 | Midway Electric<br>& Data Supply<br>403 Concord Avenue<br>Bronx, NY 10454 | Electrical Supplies | | 86,000.00 |
| Quench of New Jersey, Inc<br>P.O. Box 644006<br>Cincinnati, OH 45264-4006 | Quench of New Jersey, Inc<br>P.O. Box 644006<br>Cincinnati, OH 45264-4006 | Vendor | | 69,900.00 |
| Firecom, Inc.<br>39-27 59th Street<br>Woodside, NY 11377 | Firecom, Inc.<br>39-27 59th Street<br>Woodside, NY 11377 | Vedor | | 69,900.00 |
| Musco Sports Lighting,LLC<br>100 1st Avenue West<br>P.O. Box 808<br>Oskaloosa, IA 52577-0808 | Musco Sports Lighting,LLC<br>100 1st Avenue West<br>P.O. Box 808<br>Oskaloosa, IA 52577-0808 | Electrical Supplies | | 62,000.00 |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date  July 25, 2011                              Signature   /s/ Kevin McKosky
                                                             Kevin McKosky
                                                             President

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

## Schedule II

## List of Debtor's 5 Largest Secured Creditors

Capital One, N.A.                         Unknown
Successor by Merger to North Fork Bank
275 Broadhollow Road
Melville, New York 11747

Arch Insurance Company                    Unknown
3 Parkway
Philadelphia, PA 19102

# Schedule III

## Balance Sheet

**BALANCE SHEET**

| ASSETS | BOOK VALUE |
|---|---|
| **CURRENT ASSETS** | |
| Unrestricted Cash and Equivalents | |
| Restricted Cash and Cash Equivalents *(see continuation sheet)* | |
| Accounts Receivable (Net) | $ 30,415,100.00 |
| Notes Receivable | |
| Inventories | |
| Prepaid Expenses | $ - |
| Professional Retainers (Pinks & Golden) | $ 15,000.00 |
| Other Current Assets *(attach schedule)* | |
| TOTAL CURRENT ASSETS | $ 30,430,100.00 |
| **PROPERTY & EQUIPMENT** | |
| Real Property and Improvements (Waverly) | $ 1,000,000.00 |
| Machinery and Equipment | $ 100,000.00 |
| Furniture, Fixtures and Office Equipment | $ 25,000.00 |
| Leasehold Improvements | |
| Vehicles | |
| Less: Accumulated Depreciation | |
| TOTAL PROPERTY & EQUIPMENT | $ 1,125,000.00 |
| **OTHER ASSETS** | |
| Amounts due from Insiders/Affiliates/Employees | $ 661,600.00 |
| Other Assets *(attach schedule)* | $ - |
| TOTAL OTHER ASSETS | $ 661,600.00 |
| TOTAL ASSETS | $ 32,216,700.00 |
| **LIABILITIES AND OWNER EQUITY** | BOOK VALUE AT END OF CURRENT REPORTING MONTH |
| **LIABILITIES** | |
| Accounts Payable | $ 3,570,000.00 |
| Taxes Payable | |
| Benefits Payable | $ 5,400,000.00 |
| Notes Payable | $ 50,000.00 |
| Rent / Leases - Building/Equipment | $ 22,000.00 |
| Secured Debt | $ 13,965,000.00 |
| Professional Fees | $ 330,000.00 |
| Amounts Due to Insiders/Affiliates/Employees | $ 196,700.00 |
| TOTAL LIABILITIES | $ 23,533,700.00 |
| **OWNERS' EQUITY** | |
| Capital Stock | |
| Additional Paid-In Capital | |
| Partners' Capital Account | |
| Owner's Equity Account | |
| Retained Earnings - Pre-Petition | |
| Retained Earnings - Post-petition | |
| Adjustments to Owner Equity *(attach schedule)* | |
| Post-petition Contributions *(attach schedule)* | |
| NET OWNERS' EQUITY | $ - |
| TOTAL LIABILITIES AND OWNERS' EQUITY | $ 23,533,700.00 |

# Schedule IV

## List of Equity Security Holders

# United States Bankruptcy Court
## Eastern District of New York

In re  Coastal Electric Construction Corp.

Debtor

Case No. 8-11-75299

Chapter 11

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| Kevin McKosky<br>37 Eatondale Avenue<br>Blue Point, NY 11715 | 98.04% | | |
| Kevin Tomlinson<br>38 Michael F Street<br>Locust Valley, NY 11560 | 1.96% | | |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date   July 25, 2011

Signature   /s/ Kevin McKosky
Kevin McKosky
President

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

___0___  continuation sheets attached to List of Equity Security Holders

# Schedule V

**Cash receipts and disbursements for the thirty (30) day period following the Filing Date**

# SCHEDULE OF CASH RECEIPTS AND DISBURSEMENTS

|  | BANK ACCOUNTS | |
|---|---|---|
|  | 15 DAYS | 30 DAYS |
| CASH BEGINNING OF |  | $ - |
| RECEIPTS |  |  |
| CASH SALES |  | $ 10,000.00 |
| ACCOUNTS RECEIVABLE |  | $ 40,000.00 |
| LOANS AND ADVANCES |  | $ 100,000.00 |
| SALE OF ASSETS |  |  |
| OTHER *(ATTACH LIST)* |  |  |
| TOTAL RECEIPTS |  | $ 150,000.00 |
|  |  |  |
| DISBURSEMENTS |  |  |
| NET PAYROLL |  | $ 50,000.00 |
| PAYROLL TAXES |  | $ 20,000.00 |
| SALES, USE, & OTHER TAXES |  | $ 1,500.00 |
| INVENTORY PURCHASES |  | $ 20,000.00 |
| SECURED/ RENTAL/ LEASES |  |  |
| INSURANCE |  | $ 7,500.00 |
| ADMINISTRATIVE |  | $ 1,000.00 |
| SELLING |  | $ 1,000.00 |
| OTHER *(ATTACH LIST)* |  |  |
| OWNER DRAW * |  | $ 10,000.00 |
| PROFESSIONAL FEES |  | $ 1,000.00 |
| ADEQUATE PROTECTION PAYMENTS |  | $ - |
| TOTAL DISBURSEMENTS |  | $ 112,000.00 |
|  |  |  |
|  |  |  |
| NET CASH FLOW (RECEIPTS LESS DISBURSEME |  | $ 38,000.00 |
|  |  |  |
| CASH – END OF MONTH |  | $ 38,000.00 |

The Debtor ceased operation several months ago. The Debtor anticipates receiving new contracts and will be seeking DIP Financing for these new contracts upon appropriate notice to this Court.